**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eugene Robert Tucker, | No. CV-17-03383-PHX-DJH |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Respondents. | |

Pending before the Court are Respondents' Motion to Set Reasonable Page Limits and Motion to Preclude Juror Contact (Docs. 11, 12) and Petitioner Tucker's Motion to Stay Consideration of Respondents' Motion to Preclude Victim Contact (Doc. 18). The Court, having heard argument on February 21, 2018, rules as follows.

**1. Page limits**

Respondents ask the Court to set a limit of 200 pages for the petition and answer and 75 pages for the reply. (Doc. 11 at 2.) They argue that the Court has discretion to set page limits and that page limits are consistent with the purposes of the AEDPA to reduce delay and promote state-federal comity. (*Id.* at 3–4.) They also cite page limits imposed in other districts. (*Id.* at 3 n.2.)

The District of Arizona has not placed page limits on habeas petitions, and this Court declines to do so on an ad hoc basis. Instead, the Court will refer Respondents' request for page limitations in capital habeas cases for consideration as a matter of District policy. *See Morris v. Ryan*, No. 17-CV-926-PHX-SPL, Doc. 16.

### 2. **Juror contact**

Respondents request that the Court order Petitioner not to contact any jurors other than by leave of Court upon a showing of good cause that juror misconduct may have occurred during the trial proceedings. (Doc. 12.)

Federal courts have long recognized that "very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S. 107, 127 (1987). In *Tanner*, the Supreme Court recognized that post-verdict investigation into jury misconduct would lead in some instances to the discovery of improper juror behavior, but expressed concern that allegations "raised for the first time days, weeks, or months after the verdict, [would] seriously disrupt the finality of the process" and could undermine "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." *Id.* at 120–21.

Generally, a verdict may not be impeached on the basis of the jury's internal deliberations or the manner in which it arrived at its verdict. *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980). Rule 606(b) of the Federal Rules of Evidence is grounded in this common-law rule against admission of jury testimony to impeach a verdict. Although jurors may not be questioned about their deliberations and related matters, they may be questioned regarding any extraneous influence on their verdict. *Tanner*, 483 U.S. at 117; *Traver*, 627 F.2d at 941. Accordingly, Rule 606(b) allows juror testimony in limited circumstances to show that (1) extraneous prejudicial information was improperly brought to the jury's attention, (2) an outside influence was improperly brought to bear upon any juror, or (3) there was a mistake in the verdict form. *See Tanner*, 483 U.S. at 121; Fed. R. Evid. 606(b).

As Tucker notes, the Supreme Court recently recognized another exception to the no-impeachment rule. In *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017), the Court held that "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to

consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." The Court explained that "[n]ot every offhand comment indicating racial bias or hostility will justify setting aside the no-impeachment bar to allow further judicial inquiry." *Id.* Instead, "the statement must tend to show that racial animus was a significant motivating factor in the juror's vote to convict. Whether that threshold showing has been satisfied is a matter committed to the substantial discretion of the trial court in light of all the circumstances. . ." *Id.*

In a previous ruling in another capital habeas case, this Court granted Respondents' motion to preclude juror contact. *Cota v. Ryan*, No. 16-CV-3356-PHX-DJH, Doc. 14. Tucker, who is African American, asserts that the Court must reexamine its analysis based on the intervening holding in *Pena-Rodriguez*. (Doc. 17 at 4.) The Court disagrees.

There is no statute, rule, or law prohibiting federal habeas counsel from interviewing jurors to discover admissible evidence of juror misconduct, or requiring a showing of good cause prior to contacting jurors. Nonetheless, post-verdict interviews with jurors are not looked on favorably in the Ninth Circuit, *Hard v. Burlington Northern R.R.*, 812 F.2d 482, 485 (9th Cir. 1987), *abrogated on other grounds by Warger v. Shauers*, 135 S. Ct. 521 (2014), and district courts have "'wide discretion' to restrict contact with jurors to protect jurors from 'fishing expeditions' by losing attorneys." *United States v. Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) (quoting *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986)).

While *Pena-Rodriguez* added racial bias to the categories of evidence not covered by the no-impeachment rule, it did not circumscribe the court's discretion to oversee post-verdict contact with jurors. "The practical mechanics of acquiring and presenting such evidence will no doubt be shaped and guided by state rules of professional ethics and local court rules, both of which often limit counsel's post-trial contact with jurors." *Pena-Rodriguez*, 137 S. Ct. at 869. In *United States v. Robinson*, 872 F.3d 760, 770 (6th Cir. 2017), the Sixth Circuit held that the district court did not err when it failed to grant a new trial or conduct an evidentiary hearing on the basis of the jury foreperson's racially

insensitive remarks to two African-American jurors during deliberations. *Id.* The district court denied the motion because it was based on evidence gathered in violation of a local court rule and a specific admonishment from the bench not to contact jurors. *Id.*

The District's local rules recognize that approval for the interview of federal jurors will only be granted when proposed written interrogatories are submitted to the court within the time granted for a motion for a new trial, and only upon a showing of good cause. *See* LRCiv 32.9(b) (citing Rule 606(b)). While there is no corresponding rule prohibiting counsel from invading the province of state jurors in federal habeas proceedings, the absence of a rule is not dispositive; the Court is no less concerned with the protection of state jurors than federal jurors, and has the discretion to address these concerns on a case-by-case basis.

Tucker argues that Rule 606(b) imposes no barrier to juror contact and that in cases such as *Pena-Rodriguez* and *Turner v. Murray*, 476 U.S. 28 (1986), a right to juror contact is presumed. The Court disagrees that these cases can be read to prohibit a good cause requirement. As already noted, the Court in *Pena-Rodriguez* explained that various factors "limit counsel's post-trial contact with jurors." 137 S. Ct. at 869. In *Tanner*, the Supreme Court implicitly approved a limitation on post-verdict contact with jurors. 483 U.S. at 126. The Court stated that the violation of the district court's order and the local rule against juror interviews could, in and of itself, constitute grounds for disregarding evidence gained as a result of the interview. *Id.* Moreover, where there has been no specific claim of jury misconduct, "there is no federal constitutional problem involved in the denial of a motion to interrogate jurors." *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972).

In addition to the policy concerns expressed in *Tanner*, there are "very cogent reasons" for requiring a preliminary showing of illegal or prejudicial intrusion into the jury process before allowing counsel to conduct post-trial interviews, including protecting the jury from post-verdict misconduct and the courts from time-consuming and futile proceedings, reducing the chances and temptations for tampering with the jury, and

increasing the certainty of verdicts. *Wilkerson v. Amco Corp*, 703 F.2d 184, 185–86 (5th Cir. 1983); *see also King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978).

The lengthy passage of time in capital habeas cases highlights the substantial concerns mentioned in *Tanner* regarding the possibility of the serious disruption of the finality of the judicial process; in this case more than 14 years have passed since the jury returned its verdict. Further, though mindful of the early stage of this federal habeas proceeding, the Court also notes that Tucker has come forward with no factual allegations suggestive of jury misconduct or racial bias. In *Pena-Rodriguez*, by contrast, immediately following discharge of the jury, two jurors came forward to inform defense counsel of a third juror's bias against Mexicans. 137 S. Ct. at 861.

Finally, in light of the limited purposes for which juror evidence would ever be admissible in federal habeas proceedings, it is reasonable for this Court to allow post-verdict contact with jurors only through leave of Court on a showing of good cause. *See* Fed. R. Evid. 606(b); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

Thus, the Court finds that the proper way for Tucker to proceed is first to make a preliminary showing of good cause and then seek leave of the Court to approach jurors. Good cause may be shown only by satisfying the requirements of the exceptions set forth in Rule 606(b) or *Pena-Rodriguez—*that extraneous prejudicial information or outside influence was improperly brought to the jury's attention, or that racial animus played a role in the verdict.

### 3. Victim contact

Respondents seek an order, consistent with Arizona law as set forth in A.R.S. § 13-4433(B), precluding Tucker's defense team from directly contacting any victim in this case and directing that they initiate any such contact through counsel for Respondents. Tucker has moved for a stay of the Court's consideration of this motion pending the outcome of the plaintiffs' request for a preliminary injunction in *Arizona Attorneys for Criminal Justice [AACJ] v. Ducey*, 17-CV-1422-PHX-SPL. In *AACJ*, the plaintiffs allege

that § 13-4433(B) violates their First Amendment rights. The preliminary injunction motion was filed in May 2017.

Although Respondents do no oppose a stay, the Court finds, for the reasons expressed at the February 21 conference, that efficiency is better served if briefing on the motion is completed.

Accordingly,

**IT IS ORDERED** that Respondents' Motion to Set Reasonable Page Limits (Doc. 11) is **DENIED.**

**IT IS FURTHER ORDERED** that Respondents' Motion to Preclude Juror Contact (Doc. 12) is **GRANTED**. Tucker may not contact any jurors other than by leave of Court upon a showing of good cause.

**IT IS FURTHER ORDERED** that Tucker's Motion to Stay is **DENIED** (Doc. 18). Tucker shall file a response to Respondents' Motion to Preclude Victim Contact no later than February 28, 2018. Respondents may file a reply no later than March 7, 2018.

**Dated** this 27th day of February, 2018.

Honorable Diane J. Humetewa
United States District Judge